STATE OF MINNESOTA v. GUARANTY TRUST & SAFE-DEPOSIT CO. et al.

(Circuit Court, D. Minnesota, Fourth Division. May 6, 1896.)

1. JURISDICTION OF FEDERAL COURTS—STATE AS A PARTY.
    A federal court has no jurisdiction, on the ground of citizenship, of a suit brought by a state against either its own citizens or citizens of other states.
2. OVERISSUES OF RAILROAD STOCK—MINNESOTA STATUTE—ACTION BY STATE.
    The Minnesota statute prohibiting railroad companies from selling or disposing of any shares of stock until the same are fully paid, or issuing any stocks or bonds except for money, labor, or property actually received,

and declaring all fictitious stock or indebtedness void (Gen. St. 1894, § 2743), was enacted for the purpose of protecting stockholders and creditors against fictitious indebtedness, or watered stock, and gives the state no authority to protect such private rights by a suit in its own name.

This was a bill in equity by the state of Minnesota against the Guaranty Trust & Safe-Deposit Company, the Duluth & Winnipeg Railroad Company, the North Star Construction Company, the Safe-Deposit & Trust Company of Baltimore, and William C. Van Horne. The cause was heard on a motion by complainant for an injunction to restrain the sale of railroad property under foreclosure proceedings.

The bill of complaint alleges substantially as follows: That the Duluth & Winnipeg Railroad Company was organized in 1878 for the purpose of building and equipping a railroad from Duluth, Minn., to the northern boundary of the state. That between the years 1888 and 1892 the Duluth & Winnipeg Syndicate and the North Star Construction Company, its successor, built and equipped a hundred miles of that road on the following terms: That the syndicate, or its successor, was to obtain and pay for the right of way, construct, and equip the road, and for each mile so completed and equipped was to receive 100 shares, face value, $10,000, of preferred stock; 150 shares, common stock, face value, $15,000; and 20 bonds, face value, $20,000; and might retain possession of and operate the railroad without being accountable for any of the net earnings. That the aggregate cost to the syndicate and construction company of said buildings and equipments did not exceed a million and a half dollars, but that there were issued in payment therefor, wrongfully and unlawfully, and in direct violation of the statute of Minnesota, to the North Star Construction Company, a million dollars, face value, preferred stock, a million and a half dollars, face value, of common stock, and two million dollars of mortgage bonds of the Duluth & Winnipeg Railroad Company, by the officers of the latter company. That in January, 1893, the stockholders of the construction company accepted a proposition, whereby one Van Horne, president of the Canadian Pacific Railroad Company, acquired the entire control, management, and operation of the construction company and the Duluth & Winnipeg Railroad, and continued to control and operate the same until the appointment of a receiver for the latter company. That said Van Horne caused to be appointed his own agents and servants as officers and directors of each of said companies, whereby the business affairs of those companies were so manipulated that the earnings of the Duluth & Winnipeg Railroad were reduced from over $80,000 in 1893 to less than $16,000 in 1894, thus seeking to wreck and ruin the railroad company, and bring about the sale of its property under the mortgage or trust deed. That under the control and direction of Van Horne, during the year 1892, bonds of the railroad company were issued to the amount of $2,000,000, and that the same were issued without consideration or authority, and in fraud, of the people of the state of Minnesota. That on October 11, 1894, the Guaranty Safe-Deposit & Trust Company commenced an action against the Duluth & Winnipeg Railroad Company, the North Star Construction Company, and the Safe-Deposit & Trust Company of Baltimore to foreclose a mortgage or deed of trust for the $2,000,000 worth of bonds against the railroad company; whereupon a receiver was appointed, and the railroad company filed its answer, admitting all the allegations of the bill of complaint, and consenting that complainant might have the relief prayed for in its bill. That on January 28, 1895, a decree was entered, by consent of the railroad company, for a sale of its property, that the Guaranty Trust & Safe-Deposit Company might bid at the sale, and in payment might surrender and deliver the bonds, notice whereof was duly published. That the suit brought by the Guaranty Trust & Safe-Deposit Company against the railroad company was baseless, collusive, and fraudulent. That the railroad company was not insolvent, but suit was commenced in furtherance of a design of Van Horne and his associates to reorganize the Duluth & Winnipeg Railroad Company, and

issue stock largely in excess of the actual cost of the railroad, in violation of the statute of Minnesota. And complainant avers that, unless restrained, said Van Horne and his associates will carry out said design, in fraud of the people, and in violation of the statute of Minnesota. The bill then sets up the following statute, among others (section 2743, Gen. St. Minn.), which, so far as material, provides: "That it shall not be lawful for any railroad company existing by virtue of any of the laws of this state, nor for any officer of any such company, to sell, dispose of, or pledge any shares in the capital stock of such company, until the shares so sold, disposed of, or pledged, and the shares for which such certificates are to be issued, shall have been fully paid, nor issue any stocks or bonds except for money, labor, or property, actually received and applied to the purpose for which such corporation was created, and all fictitious stock, dividends and other fictitious increase of the capital stock or indebtedness of any such corporation shall be void." An injunction is then asked that the defendants be restrained from executing and carrying out the agreement set up; that an accounting be had to determine the actual cost of said railroad, and the present owners of claims against the same; that the railroad properties be sold for the purpose of paying the amount actually expended in the construction thereof, and the purchasers be permitted to issue securities against the properties of the reorganized company to an amount equal to the actual cost of the road; that any valid and subsisting claims against the railroad company may be applied as part payment pro rata upon the purchase of the property; that the outstanding stock and bonds heretofore issued by the railroad company be declared null and void; that the sale be enjoined pending this litigation, and the agreement heretofore referred to, if executed, be declared null and void.

H. W. Childs, Atty. Gen., and Geo. B. Edgerton, Asst. Atty. Gen., for the State of Minnesota.

Munn, Boyeson & Thygeson, for defendants.

NELSON, District Judge (after stating the facts). This motion is based upon a bill with accompanying affidavits, filed by the state of Minnesota, to enjoin and restrain a sale under a decree of foreclosure heretofore granted in the case of Guaranty Trust & Safe-Deposit Company against the Duluth & Winnipeg Railroad Company et al. No stockholder of the railroad company interposed any objection to the foreclosure. In my opinion, the motion must be denied, for the following reasons:

1. No federal question is involved. A state is not a citizen, and this court has no jurisdiction in a suit brought by a state against its own citizens or citizens of other states.

2. The state has no property rights in the original controversy.

3. The provisions of section 2743, Gen. St. Minn. 1894, relied upon by the attorney general, and which it is claimed give the state a standing in this court by a bill in equity to enforce the same, were enacted for the purpose of protecting stockholders and creditors against fictitious indebtedness, or "watered stock," so called; in other words, to protect private rights; and the state has no authority to protect such private rights by suit.

4. The bill is not ancillary or auxiliary to the main proceeding, but original, and some of its features are in the nature of a bill "quia timet"; that is, for the purpose of quieting apprehensions of probable or possible future violation of the statute.

5. Counsel is mistaken when he says that the state can secure relief, if entitled to any, nowhere else save in the original action,

and by this proceeding. The state, by informing bidders at the sale of what it intends to do, would not be cut off from proceeding against purchasers.

After such consideration as I have been able to give the matter in the limited time allowed, I am clearly of the opinion that the state has no standing in court under the proceedings instituted by it, and I decline to issue an injunction restraining the sale.